# CIRCUIT COURT OF FAIRFAX COUNTY

Poco Loco, L.L.C., et al.

v.

Tiwania C. Barnes

October 16, 2006

Case No. CH-2005-5395

BY JUDGE JONATHAN C. THACHER

On September 1, 2006, this matter came on for a hearing on the Plaintiffs/Counterdefendants' Demurrer to the Defendant/Counterclaimant Tiwania C. Barnes' eight count Amended Counterclaim. The eight counts of the Amended Counterclaim are: I: Breach of Contract; II: Fraud; III: Civil Conspiracy; IV: Breach of § 50.73-103 as to Plaintiff/Counterdefendant Donna Moseley only (hereinafter "Moseley"); V: Statutory Conspiracy; VI: Conversion; VII: Declaratory Judgment; and VIII: Partition of Property. After hearing arguments on Counts I through VII, the Court entered an Order (hereinafter the "September 1st Order") on Counts I, II, III, and VII. No argument was held on Count VIII, and no ruling was made as to Count VIII. The remaining Counts IV, V, and VI are the subject of this opinion.

## Background

Plaintiffs, who consist of the entities Poco Loco, L.L.C., and DCP, L.L.C., and individuals Donna and John Moseley, and Phillip and Linda Pon filed suit against Defendant Barnes to determine their rights to a parcel of land in Franklin County. On July 21, 2006, Barnes filed an Amended Counterclaim alleging substantially different facts and no fewer than eight counts.

Plaintiff Donna Moseley and Defendant Tiwania Barnes are real estate agents with Prudential Carruthers Realty, who evidently had a partnership

agreement, the exact nature and terms of which are in dispute. Plaintiff Phillip Pon was employed as an administrative assistant to Moseley and Barnes during their partnership. At some point during the partnership, all the parties entered into an oral agreement to purchase, subdivide, and develop 26 acres of land located at Franklin County's Smith Mountain Lake.

Plaintiffs contend that the land purchase was initiated by Phillip and Melinda Pon, and that the Pons subsequently extended offers to Plaintiff Donna Moseley and Barnes to participate in equal shares. Barnes denies this version of events, but does not substitute her own version. She admits Plaintiff's contention that she initially committed to a 15% equity share, but contends that, by proffering the check for $79,000 at the time of settlement, she is entitled to a 33% share.

Plaintiffs allege that difficulties arose with financing because of Barnes' alleged poor credit history and failure to file tax returns. Barnes denies these claims, and notes that the eventual $250,000 loan on the property lists her as a borrower.

The land purchase was consummated by all parties on July 12, 2005, a rare point that all parties agree upon. Plaintiffs allege that defendant refused to abide by an agreement fixing her share of the costs and profits associated with the property at 15%, with the remainder being fixed at 40% to Poco Loco and 45% to DCP.

Barnes denies Plaintiffs' pleadings and alleges in her Amended Counterclaim that the property was purchased jointly and severally, as opposed to the tenants in common arrangement alleged by plaintiffs. She claims entitlement to 33% ownership of the land in question based on her proffer of $79,000 at the time of settlement. Neither party disputes that Barnes began to challenge the ownership arrangement on or about July 15, 2005, almost immediately after settlement.

The parties do not dispute that Barnes contributed well in excess of 15% of the required cash at settlement, nor do they dispute that the settlement attorney proffered a refund to Barnes of $44,395.85, a check Barnes refused to accept because of her ongoing claim of 33% ownership. Plaintiffs allege that the deed was drawn by the settlement attorney to reflect a 15% ownership by Barnes, a percentage plaintiffs allege was originally agreed upon by all parties. For her part, Barnes claims the deed drawn by the settlement attorney incorrectly apportioned ownership, and alleges she notified him of such.

Because of the controversy between the parties in the land deal, the real estate sales partnership between Plaintiff Donna Moseley and Defendant Barnes deteriorated and ultimately dissolved. The dispute over the

deterioration and dissolution of the real estate partnership is the subject of the Counts of the Amended Counterclaim demurred to and analyzed below.

*Analysis*

*Standard of Review*

A demurrer admits the truth of all material facts properly pleaded including those facts expressly alleged, those which fairly can be viewed as impliedly alleged, and those facts fairly and justly inferred from the pleading. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 278 (1993). A complaint need not descend into statements giving details of proof; rather, a complaint that contains sufficient allegations of material facts to inform the defendant of the nature and character of the claim is sufficient to withstand demurrer. *CaterCorp*, 246 Va. at 24, 431 S.E.2d at 279. As Virginia is a notice pleading state, even a flawed complaint that has been drafted so that the defendant is on notice of the nature and character of the claim will survive demurrer. *Id.*

*The Prudential Partnership: Counts IV, V, and VI*

Counts IV, V, and VI deal with the alleged partnership between Barnes and Donna Moseley. Both Barnes and Moseley are real estate agents with Prudential Carruthers Realty. Exhibit A of the Amended Counterclaim is a document unsigned by either party that, if agreed to, would entitle Barnes to 25% of all commissions earned from real estate transactions by either party. In general, Plaintiff Moseley accepts the existence of a generalized agreement, but never specifically admits that it is subject to the terms as defined in Exhibit A to Defendant's counterclaim or any other terms described by the Defendant. Barnes alleges that her share of the commissions had since grown to 50% when the partnership allegedly ended on or about July 1, 2005. Barnes alleges that she was not reimbursed for her ownership interest at the time the partnership dissolved and also seeks unspecified real estate commissions she believes were not paid to her by Moseley.

I. *Count IV: §§ 50-73.103 and 50-73.112 (against Donna Moseley only)*

A dissociated partner may maintain an action against a partnership and/or other partners to determine the buyout price of a partner's interest so long as that action is commenced within 120 days after the partnership has

tendered payment or made an offer to pay, or if the action is commenced within one year after written demand for payment if no payment or offer to pay is tendered. Va. Code § 50-73.112(I) (2006).

Nowhere in the Amended Counterclaim does Barnes allege that Moseley tendered payment for Barnes' share or made an offer to pay Barnes for her share of the Prudential Partnership, nor does Barnes allege that a written demand for such payment was ever made. Neither of the provisions required to maintain an action under § 50-73.112(I) have been satisfied.

Therefore, Moseley's demurrer to Count IV is sustained.

II. *Count V: Statutory Conspiracy (against Donna Moseley and Phillip Pon only)*

Statutory Conspiracy to Injure Another in Trade, Business, or Profession under Va. Code §§ 18.2-499 and 18.2-500 provides civil liability where any two or more persons "combine, associate, agree, mutually undertake, or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, or business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act." Malice is an essential element of any action under § 18.2-499 and malice may be inferred when the defendant's primary and overriding purpose it to injure the victim by harming the victim's reputation, trade, business, or profession. *Greenspan v. Osheroff,* 232 Va. 388, 398-99, 351 S.E.2d 28, 35-36 (1986); *CaterCorp.,* 246 Va. at 28, 431 S.E.2d at 281-82.

In *CaterCorp,* a demurrer to civil conspiracy under § 18.2-499 was overruled because the pleadings contained facts describing the actions taken by the defendant in its efforts to circumvent a non-compete agreement and harm the plaintiff. *CaterCorp,* 246 Va. at 28, 431 S.E.2d at 281-82. *CaterCorp* involved an alleged conspiracy to violate a non-compete employment agreement and a settlement agreement that prohibited a former employee from soliciting the plaintiff's customers for a period of two years and hiring certain individuals for a period of time without the plaintiff's prior written consent. *Id.* at 26-27, 431 S.E.2d at 281-82. Among those facts pleaded by the plaintiff were allegations that the defendant acted in concert with others to solicit the plaintiff's current customers, hire individuals that were on the prohibited list, and otherwise violate the underlying agreements for the purposes of harming the plaintiff; in addition, it was also alleged that these actions were taken

through the use of an elaborate scheme designed for the purpose of obfuscating the defendant's actions. *Id.* The Virginia Supreme Court found those allegations sufficient to withstand demurrer. *Id.*

Barnes alleges that Donna Moseley and Phillip Pon conspired to oust her from the Prudential Partnership in order to deprive her of income necessary to continue in the land deal, therefore allowing them to assume her ownership stake in the land parcel. Barnes alleges that both plaintiffs took "overt steps" in furtherance of a conspiracy but fails to specifically allege what any of those steps were except that Moseley complained to the Prudential broker that she could no longer work with Barnes and that Moseley directed Pon to complain to the Prudential Broker about Barnes' continued presence in the Prudential office. Barnes' Amended Counterclaim at ¶¶ 84-85.

The pleadings in *CaterCorp* contained several factual allegations; however, the Barnes' Amended Counterclaim fails to allege facts sufficient to draw any reasonable inference that the alleged actions undertaken by Plaintiffs Moseley and Pon are sufficient to sustain a cause of action under the relevant statute. Therefore Moseley's and Pon's demurrer to Count V is sustained.

## III. *Count VI: Conversion (against Donna Moseley only)*

"Conversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." *Neurology Servs. v. Fairfax Med. PWH, L.L.C.*, 67 Va. Cir. 1, 10 (Fairfax, 2005). And returning to the standard of review on demurrer, it is only necessary to allege sufficient facts whereby the opposing party is on notice of the nature and character of the claim. *CaterCorp*, 246 Va. at 24, 431 S.E.2d at 279. Again, the question here is whether the Defendant's Amended Counterclaim pleads sufficient facts to put Moseley on notice of the nature and character of the claim.

Barnes alleges that Moseley has refused to pay Barnes commissions earned through the partnership prior to its dissolution specifically those commissions generated on sales between June 30, 2005, and July 18, 2005.

Moseley counters that the facts alleged by Defendant fail to state a claim and are contrary to the unsigned partnership agreement proffered as evidence of Defendant's claim and, while not admitting that the agreement is enforceable, Moseley argues the allegations under the Conversion count are merely conclusory and, therefore, insufficient to withstand demurrer.

Here Barnes has pleaded sufficient facts that place Moseley on notice that she is suing for commissions on sales generated during a specific period of time prior to the partnership's termination. Therefore, Moseley's demurrer to Count VI is overruled.

## Conclusion

The Plaintiffs' demurrers to Counts IV and V are sustained, and the demurrer to Count VI is overruled. With regards to Counts IV and V, Defendant Barnes is granted leave to amend within twenty-one days of the entry of the order reflecting this ruling.